KYSER, APPELLEE, *v.* BOARD OF ELECTIONS OF CUYAHOGA COUNTY ET AL., APPELLANTS.

(No. 72-903—Decided October 24, 1973.)

18

*Rogers, Horton & Forbes Co. L. P. A.* and *Mr. Clarence D. Rogers, Jr.,* for appellee.

*Mr. William J. Brown,* attorney general, *Mr. Robert A. Sicuro, Mr. Michael R. Grove, Mr. John T. Corrigan,* prosecuting attorney, and *Mr. John L. Dowling,* for appellants.

WILLIAM B. BROWN, J. The question presented in this case is whether a post office box number (which relator gave as evidence of his permanent residence) can be used to fulfill the residency requirements of R. C. 3503.01.

Both the federal government and the states provide regulation for a citizen's exercise of his franchise.[2] The states, on their part, have the "* * * unquestioned power to impose reasonable residence restrictions on the availability of the ballot. *Pope* v. *Williams* (1904), 193 U. S. 621. There can be no doubt either of the historic function of the states to establish, on a nondiscriminatory basis, and in accordance with the Constitution, other qualifications for the exercise of the franchise." *Carrington* v. *Rush* (1964), 380 U. S. 89, 91.

Section 1, Article V of the Ohio Constitution, as amended January 1, 1971, lists the general qualifications for voting, as follows:

"Every citizen of the United States, of the age of twenty-one years, who shall have been a resident of the state six months next preceding the election, and of the coun-

---

[2] For instance, a 1970 amendment to the Voting Rights Act of 1965 gave the franchise in federal elections to 18-year olds. Section 1973bb, Title 42, U. S. Code.

ty, township, or ward, in which he resides, such time as may be provided by law, shall have the qualifications of an elector, and be entitled to vote at all elections.''

R. C. Chapter 3503 provides more specifically the qualifications and registration process for voting. R. C. 3503.01 requires, in pertinent part:

''Every citizen of the United States who is of the age of eighteen years or over and who has been a resident of the state six months, of the county thirty days, and of the voting precinct thirty days next preceding the election at which he offers to vote has the qualifications of an elector and may vote at all elections * * *.''

: In the instant case, the board of elections refused to accept relator's registration as an elector because he had provided no proof of residence. On his registration form he listed a post office box number as his permanent residence. This was the mailing address used by relator since he forsook a stationary household for his nomadic mobile home. R. C. 3503.02 defines ''residence'' as:

''All registrars and judges of elections, in determining the residence of a person offering to register or vote, shall be governed by the following rules:

''(A) That place shall be considered the residence of a person in which his habitation is fixed and to which, whenever he is absent, he has the intention of returning.'' The balance of the section lists specific examples to aid in the determination of ''residence.''[8]

---

[8]R. C. 3503.02 provides, in pertinent part:

''(B) A person shall not be considered to have lost his residence who leaves his home and goes into another state or county of this state, for temporary purposes only, with the intention of returning.

''(C) A person shall not be considered to have gained a residence in any county of this state into which he comes for temporary purposes only, without the intention of making such county his permanent place of abode.

''(D) The place where the family of a married man or woman resides shall be considered to be his or her place of residence; except that when the husband and wife have separated and live apart, the place where he or she resides the length of time required to entitle a person to vote shall be considered to be his or her place of residence.

The essence of that statutory definition of residence is "fixed habitation." "Habitation" is defined in Webster's Third New International Dictionary, as "* * * dwelling place; house, home, residence." The post office box where relator picks up his mail cannot be considered his dwelling place. Therefore, the post office box number cannot be used to fulfill his residence requirement, and the board was correct in refusing to accept his registration in Ward 31, Precinct E.

The Court of Appeals did not hold that the post office box number could be considered as fulfillment of relator's residence requirement. Rather, it held that he had retained his residence at the place of his last stationary household, reasoning that:

"* * * Once a person acquires the status of an elector in a given precinct, that status is lost only if the person (1) becomes an elector in another precinct in the same county or another county of the state by establishing a permanent residence in that precinct thirty days next preceding an election (O. R. C. 3503.01); or (2) removes to another state with the intention of making such state his residence (O. R. C. 3503.02[E]); or (3) removes to another state with the intention of remaining there an indefinite time and making such state his place of residence, notwith-

"(E) If a person removes to another state with the intention of making such state his residence, he shall be considered to have lost his residence in this state.

"(F) If a person removes to another state with the intention of remaining there an indefinite time and making such state his place of residence, he shall be considered to have lost his residence in this state, notwithstanding the fact that he may entertain an intention to return at some future period.

"(G) If a person removes out of the county to engage in the services of the United States government, he shall not be considered to have lost his residence in this state during the period of such service, and likewise should he enter the employment of the state, the place where such person resided at the time of his removal shall be considered to be his place of residence.

"(H) If a person goes into another state and while there exercises the right of a citizen by voting, he shall be considered to have lost his residence in this state."

standing the fact that he may entertain an intention to return at some future period (O. R. C. 3503.02[G]); or (4) goes into another state and while there exercises the right of a citizen by voting (O. R. C. 3503.02[H]).

"* * * It is clear that the plaintiff, though presently a transient, has not lost his right to vote in his old precinct under any of the aforementioned provisions of the Code. * * *"

The reasoning of the Court of Appeals seems to be based on its conclusion that, once a person acquires the status of an elector, that status is lost only by four types of activity. Such a conclusion is not supported by the Code. R. C. 3503.01 makes no reference to a person's former status as a resident; it refers only to his present status, i. e., whether he "has been a resident * * * of the voting precinct thirty days next preceding the election at which he offers to vote * * *." R. C. 3503.02 lists two elements which are determinative of residency—(1) fixed habitation and (2) the intention of returning to that habitation. It is the present intention which determines a person's residency status, i. e., his intention during the thirty-day period referred to in R. C. 3503.01, and not his past intention some three years in the past, when he was living in a stationary household. He cannot have residence in a place where he has not lived for three years, and to which he presently has no intention of returning. Therefore, relator is not qualified to register in the precinct where he formerly maintained a residence, and from which he removed himself.

Relator contends that he was prevented from registering to vote because he could not fulfill a *durational residency* requirement; that this requirement of the state results in a classification of its residents according to lifestyle, i. e., those who pay taxes and can vote because they have a fixed residence, and those who pay taxes and cannot vote because of their nomadic existence within the community. He contends further that this classification violates the Fourteenth Amendment Equal Protection Clause, absent a demonstration that such a law is necessary to pro-

mote a compelling governmental interest. See *Dunn* v. *Blumstein* (1972), 405 U. S. 330.

We, too, share relator's concern lest classifications in election laws prevent a qualified citizen from exercising his franchise. However, the question before us involves *bona fide* residency. Relator failed to show the board of elections that he was a bona fide resident of the precinct in which he attempted to register. If there is no demonstration of bona fide residency, there is no necessity to determine whether the durational residency requirements have been satisfied. The state has a right to require that citizens wishing to be enrolled as voters be bona fide residents of the community. *Carrington* v. *Rush* (1964), 380 U. S. 89, 93. The board must interpret the durational voting requirements liberally, for:

"* * * The exercise of the franchise is one of the most important functions of good citizenship, and no construction of an election law should be indulged that would disfranchise any voter if the law is reasonably susceptible of any other meaning." *McMillan* v. *Siemon* (1940), 36 Cal. App. 2d 721, 726, 98 P. 2d 790.

We hold that relator's designation of his post office box number as proof of his permanent residence was not legally sufficient to fulfill the requirement of "residence" in R. C. 3503.01. Therefore, the board of elections was justified in refusing to register him as a voter in Ward 31, Precinct E, of the city of Cleveland.

*Judgment reversed.*

O'Neill, C. J., Corrigan, Stern, Celebrezze and P. Brown, JJ., concur.

Herbert, J., concurring. I concur in the result reached by my colleagues, but am of the opinion that this cause is not one which was properly cognizable in statutory mandamus.