**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Holwadel v. Hamilton Cty. Bd. of Elections,* Slip Opinion No. 2015-Ohio-5306.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2015-OHIO-5306

THE STATE EX REL. HOLWADEL ET AL., APPELLANTS, *v.* HAMILTON COUNTY BOARD OF ELECTIONS ET AL., APPELLEES.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Holwadel v. Hamilton Cty. Bd. of Elections,* Slip Opinion No. 2015-Ohio-5306.]**

*Elections—Mandamus—Board of elections did not abuse its discretion in concluding that relator had failed to prove by clear and convincing evidence that respondent had not established an Ohio habitation to which he intended to return after working abroad—Writ denied.*

(No. 2015-0255—Submitted August 11, 2015—Decided December 22, 2015.)

APPEAL from the Court of Appeals for Hamilton County, No. C-130717, 2015-Ohio-87.

_____

**Per Curiam.**

{¶ 1} This case arises out of a challenge to the registration of respondent-appellee Randy Simes as an eligible voter in Hamilton County. The First District

Court of Appeals refused to grant a writ of mandamus compelling respondents-appellees the Hamilton County Board of Elections and its members to remove Simes from the voter rolls. We affirm.

{¶ 2} On July 13, 2015, relators-appellants, Barbara Holwadel and Steven W. Johnson, filed a motion for expedited oral argument. No memoranda in opposition were filed. We hold that oral argument is unnecessary for resolution of the case, and we therefore deny the motion.

**Background**

{¶ 3} On September 25, 2013, a registered elector, Mary Siegel, filed a challenge to the voter registration of Randy Simes. On October 7 and 14, 2013, the board of elections held a hearing on the challenge. At the close of the evidence, the board voted three to one to reject the challenge.

{¶ 4} On November 4, 2013, Holwadel and Johnson ("Holwadel") filed an action in the First District Court of Appeals seeking a writ of mandamus overturning the board's decision. Respondents—the board of elections, the individual members, and Simes—filed motions to dismiss, challenging Holwadel's standing. The court of appeals denied the motions to dismiss on January 20, 2014.

{¶ 5} On January 14, 2015, the court of appeals denied the writ. The court held that Holwadel failed to establish by clear and convincing evidence that the board had a clear legal duty to strike Simes from the voter rolls. Holwadel timely appealed.

**The Evidence Presented at the Hearing**

*Mary Siegel*

{¶ 6} Siegel alleged that Simes was a resident of Chicago, Illinois, where he worked for Parsons Brinckerhoff, until September 2013, at which time he relocated to South Korea. According to documents that Siegel submitted, Simes registered to vote in Chicago on May 22, 2012, and voted in Chicago on November 6, 2012.

2

**{¶ 7}** On July 9, 2013, Simes posted on Facebook that he would be in Cincinnati "this Wednesday through Sunday." Three days later, on July 12, 2013, Simes registered to vote in Hamilton County. On his Ohio registration, Simes listed his address as 1343 Main Street, Unit 9, in Cincinnati. Siegel testified that she personally visited the address and that the lobby intercom directory listed only one resident of Unit 9: T. Estell.

**{¶ 8}** Screenshots of Simes's Twitter account showed that he tweeted that he was in Chicago on at least 15 days throughout the summer of 2013.[1] As of September 4, the UrbanCincy website that Simes owns and manages stated that he "currently resides in Chicago's Lakeview East neighborhood." A paycheck from Parsons Brinckerhoff, dated September 26, showed his Chicago address and Illinois tax withholding.

**{¶ 9}** On September 6, 2013, Simes tweeted that it was his "[l]ast day at the Chicago office" of Parsons Brinckerhoff. Five days later, Simes tweeted that he had arrived in Korea, where, according to his LinkedIn profile, he continued to work for Parsons Brinckerhoff. On August 19, Simes posted on Twitter that "all my stuff is now on its way to Korea," from which evidence Siegel deduced that his relocation to Korea was permanent. A page of the UrbanCincy website stated in the fall of 2013 that Simes "currently lives in the Daechi neighborhood of Seoul's Gangnam district."

**{¶ 10}** On July 31, Simes contributed money to the campaign of Roxanne Qualls for Mayor of Cincinnati. Qualls's campaign records show that Simes used his Chicago address when he made the contribution. Siegel claims that Simes fraudulently registered in Hamilton County in order to vote for Qualls.

---

[1] Simes tweeted that he was in Chicago on June 8, June 15, June 24, July 4, July 20, July 21, July 26, July 30, August 10, August 11, August 15, August 23, September 6, September 8, and September 9, 2013.

*Travis Estell*

**{¶ 11}** Travis Estell, whom Siegel subpoenaed to appear at the hearing, testified as follows. Estell owns and lives in the two-bedroom condominium at 1343 Main Street, Unit 9. He has known Simes for about five years. They are good friends and work together on the UrbanCincy website.

**{¶ 12}** In the summer of 2013, Simes was working for Parsons Brinckerhoff in Chicago. Parsons Brinckerhoff also has a Cincinnati office, and Simes would work out of that office when he came to town.

**{¶ 13}** Conversations regarding the possibility of Simes going to Korea began in the spring, and the trip was confirmed in the summer. Estell told Simes that Simes could reside with Estell while in Cincinnati.

**{¶ 14}** Simes was in Cincinnati "several weeks during the summer." He made "multiple trips" between Chicago and Cincinnati and resided at the condominium whenever he was in Cincinnati. Estell described Simes as "essentially living out of a suitcase." He kept "all his stuff" at the condominium, including clothes and toiletries. These stays were sometimes as long as a week at a time. But Simes's clothing and toiletries were only in the condominium while he was there.

**{¶ 15}** Estell had no written lease agreement with Simes, and Simes did not pay rent. But Simes had his own key, and he had guests over to visit. When asked, Estell was unable to give a "date certain" when Simes became a resident of the condominium.

**{¶ 16}** Estell further testified that he and Simes did not discuss in advance the topic of Simes registering to vote. He first became aware that Simes had registered to vote using the condominium address when Simes asked him if a card had arrived in the mail from the board of elections. The card and an absentee ballot arrived while Simes was in Chicago. Because Simes voted in person, Estell shredded the absentee ballot. During one trip to Cincinnati, Simes tried to get an

Ohio driver's license but was unsuccessful because he went to a location that could not administer the necessary eye test.

{¶ 17} Simes had a fully furnished apartment in Chicago. He terminated the lease, and before leaving for Korea, he removed all of his belongings because he would no longer have a residence in Chicago. By September 5, 2013, most of Simes's belongings were en route to Korea. On that date, he posted a message on his Facebook page inviting his friends to come to his Chicago apartment and take any of his belongings that they wanted. Simes left Chicago for Korea, where he remained as of the hearing date.

{¶ 18} Estell further testified that he and Simes are in touch daily. Simes's mail, including bank statements and credit-card statements, comes to Estell's condominium. Estell scans whatever documents are important and e-mails them to Simes. However, at present, Simes keeps no clothes or toiletries at the condominium, and he never had his own furniture there. In fact, Simes does not have furniture anywhere in the United States.

{¶ 19} Estell was clear that Simes has no intention of returning to live in Chicago. Rather, Simes intends to return to Cincinnati. Estell and Simes discussed Simes's intention to return to Cincinnati, specifically to the Over-the-Rhine neighborhood, where Estell's condominium is located. However, Estell testified that they have not had specific conversations about Simes returning to live at the condominium. Estell indicated that Simes is "welcome" to live at the condominium when he returns from Korea. But he and Simes "have not had any conversations regarding the particular place where [Simes] would be living when he returns."

*The Simes Declaration*

{¶ 20} Simes submitted a signed declaration that his attorney read into the record. The declaration explained that Simes was unable to attend the hearing because he was temporarily located and employed in Korea. The declaration then offered the following facts.

**{¶ 21}** Simes grew up in Hamilton County. He first registered to vote in March 2004, at the age of 19, using his parents' address. He voted in Hamilton County in November 2004 and in several elections thereafter. After graduating from the University of Cincinnati, he worked in a number of locations in the United States and spent one year in Korea. "However, [Simes] always considered Hamilton County [his] home, and intended to return to Hamilton County when [his] career allowed."

**{¶ 22}** In January 2012, Simes took a job in Chicago. He rented an apartment in Chicago, registered to vote in Illinois, and cast a ballot in Chicago in the November 2012 election. In approximately March 2013, his employer offered him a temporary position in Korea. Simes signed a two-year contract to work in Korea, which stipulated that the company would provide Simes with one round-trip economy-class airfare from Seoul to Cincinnati for "[d]emobilization" at the completion of the assignment.

**{¶ 23}** Before moving to Korea, Simes elected to re-establish his residency in Cincinnati. In June 2013, he changed his mailing address for bank statements and other purposes to a condominium at 1343 Main Street, Unit 9, Cincinnati, Ohio 45202. The condominium's owner was a friend and colleague named Travis Estell. Estell gave Simes a key to the condominium, and Simes spent "many nights" at that address during the summer of 2013.

**{¶ 24}** Simes instructed his employer to change his domestic address for payroll purposes to the Cincinnati address. His accounts with Fifth Third Bank, Capital One, and Banana Republic all show the Cincinnati address.

**{¶ 25}** On July 12, 2013, Simes registered to vote in Hamilton County and authorized the board of elections to notify the state of Illinois to cancel his registration in Illinois. In September of 2013, he participated in early, in-person voting at the Hamilton County board of elections. He did not vote in the state of Illinois in 2013.

**{¶ 26}** Simes is the managing editor of UrbanCincy, a sole-proprietorship business and blog that covers local Cincinnati issues. In connection with that work, Simes submitted to the court a W-9 form using the Cincinnati address as his residence. He also submitted a United States Postal Service change-of-address form requesting that mail addressed to him in Chicago be forwarded to the Cincinnati condominium.

**{¶ 27}** Simes relocated to Korea on approximately September 10, 2013. He gave up his residence in Chicago at that time and maintains no home or apartment there or anywhere else in the United States. Simes claims that Cincinnati is "the place [to which he] intend[s] to return after [his] assignment to Korea is concluded."

**{¶ 28}** In response to the Twitter posts introduced by Siegel, Simes's attorney submitted credit- and debit-card records to show his presence in the Cincinnati area on nine days over the course of the summer of 2013.

**Governing Law and Standard of Review**

**{¶ 29}** "In a mandamus action challenging the decision of a county board of elections, the standard is whether the board 'engaged in fraud, corruption, or abuse of discretion, or acted in clear disregard of applicable legal provisions.' " *State ex rel. Mann v. Delaware Cty. Bd. of Elections*, 143 Ohio St.3d 45, 2015-Ohio-718, 34 N.E.3d 94, ¶ 13, quoting *Whitman v. Hamilton Cty. Bd. of Elections*, 97 Ohio St.3d 216, 2002-Ohio-5923, 778 N.E.2d 32, ¶ 11. This court's task is to review the decision of the court of appeals to see if it abused its discretion in denying the writ. *State ex rel. Mun. Constr. Equip. Operators' Labor Council v. Cleveland*, 141 Ohio St.3d 113, 2014-Ohio-4364, 22 N.E.3d 1040, ¶ 24.[2]

---

[2] Holwadel argues that this court should conduct a de novo review on the grounds that the court of appeals decided the case on summary judgment. But reviewing that ruling de novo will make little difference because the board's decision must still be reviewed for abuse of discretion.

Alternatively, Holwadel suggests a de novo review under this court's "plenary power" in extraordinary writ cases. That authority "generally refers to our ability to address the merits of a writ case without the necessity of a remand if the court of appeals erred in some regard." *State ex*

**{¶ 30}** An otherwise qualified citizen is eligible to vote if the person (1) has been a resident of the state for 30 days immediately preceding the election at which the citizen offers to vote, (2) is a resident of the county and precinct in which the citizen offers to vote, and (3) has been registered to vote for 30 days. R.C. 3503.01(A). In determining a prospective voter's residence, "[t]hat place shall be considered the residence of a person in which the person's habitation is fixed and to which, whenever the person is absent, the person has the intention of returning." R.C. 3503.02(A).

**Legal Analysis**

**{¶ 31}** Holwadel argues that the board misapplied R.C. 3503.02(A) by focusing exclusively on Simes's future intention to reside in Hamilton County, without finding that he had a fixed habitation at the relevant time. In addition, Holwadel alleges that the board abused its discretion because there was "a dearth or scarcity of evidence to support any conclusion that, at the time Mr. Simes registered to vote on July 12, his claimed voting residence of 1343 Main Street #9 had become, at that time, become [sic] his 'fixed habitation' and, also at that time, he had the intention of returning to that fixed habitation."

**{¶ 32}** The preceding sentence demonstrates two legal errors at the heart of Holwadel's case. First, Holwadel has shifted the burden of proof. The question is not whether there was sufficient evidence to find that Simes had a fixed habitation in Cincinnati, but whether Siegel proved by clear and convincing evidence[3] that Simes did *not* meet the statutory requirements to vote.

---

*rel. Natl. Elec. Contrs. Assn. v. Ohio Bur. of Emp. Servs.*, 88 Ohio St.3d 577, 579, 728 N.E.2d 395 (2000). However, this authority does not alter the underlying standard of review.

[3] The board of elections applied a clear-and-convincing standard. We have not definitively adopted this standard of proof in voter challenges but have employed this standard in deference to the statutory interpretation of a prior secretary of state. *See State ex rel. Husted v. Brunner*, 123 Ohio St.3d 288, 2009-Ohio-5327, 915 N.E.2d 1215, ¶ 17; *see also State ex rel. Robinson-Bond v. Champaign Cty. Bd. of Elections*, 2d Dist. Champaign No. 2011-CA-21, 2011-Ohio-6127, ¶ 22. Holwadel has not challenged this decision.

**{¶ 33}** Second, Holwadel has the relevant date wrong. The critical date by which the prospective voter must be a resident is not the registration date, but 30 days prior to "the election at which the citizen offers to vote." According to records from the board of elections, Simes cast an early ballot on August 28, 2013. So the relevant date is 30 days prior, or July 29, 2013. Thus, the fact that Simes returned to Chicago after registering to vote on July 12, during what Holwadel terms a transient visit, is not relevant.

**{¶ 34}** In *Kyser v. Bd. of Elections of Cuyahoga Cty.*, 36 Ohio St.2d 17, 303 N.E.2d 77 (1973), we held that the term "habitation," as used in the statute, means a "dwelling place; house, home, residence." *Id*. at 21, quoting Webster's Third New International Dictionary. *Kyser* established that a post office box is not a habitation. *Id*. But we did not have occasion to discuss what, if anything, it means to say that one's habitation is "fixed." *See id.*

**{¶ 35}** Holwadel argues that Simes never established a fixed habitation in Hamilton County because he had no lease or rent arrangement with Estell, he left no clothes behind when he returned to Chicago, and he and Estell did not discuss the possibility of Simes living in the condominium permanently upon his return from Korea. But we have never held that these are necessary indicia of habitation.

**{¶ 36}** Siegel's own evidence—including documents and Estell's testimony—established that Simes cancelled his voter registration in Illinois, forwarded his mail to the Cincinnati condominium, registered to vote in Ohio, tried to obtain an Ohio driver's license, had a key to the condominium and an open invitation to stay there any time, and was in the process of permanently abandoning his residence in Illinois. Based on this evidence alone, we agree with the court of appeals that the board did not abuse its discretion when it concluded that Siegel had failed to prove by clear and convincing evidence that Simes had not established a habitation in Hamilton County to which he intended to return when his business in Korea was concluded. *See State ex rel. Stine v. Brown Cty. Bd. of Elections*, 101

Ohio St.3d 252, 2004-Ohio-771, 804 N.E.2d 415, ¶ 21 (there is no abuse of discretion when a board of elections reaches a conclusion based on substantial but conflicting evidence).

{¶ 37} The evidence in Simes's declaration reinforces this conclusion, particularly his stated intention to return to Hamilton County and his arrangement with Parsons Brinckerhoff to convey him to Cincinnati, not Chicago, at the end of his contract.

{¶ 38} For these reasons, we affirm the judgment of the court of appeals.

**Other Issues**

{¶ 39} The parties have raised four additional issues which we now address: (1) the board and Simes argue that Holwadel and Johnson lack standing to bring this action, (2) the board argues that this court lacks jurisdiction to hear the case, (3) Holwadel argues that the board abused its discretion by admitting the declaration of Randy Simes, and (4) Holwadel argues that this court should hold expedited oral argument in this case. We reject all four arguments.

*Standing*

{¶ 40} The board and Simes contend that Holwadel and Johnson have no standing to seek mandamus relief because it was not they, but Mary Siegel, who filed the challenge to Simes's voter registration with the board. The court of appeals correctly rejected this argument.

{¶ 41} Resident electors have standing to bring mandamus actions to enforce public duties in election matters. *State ex rel. Barth v. Hamilton Cty. Bd. of Elections*, 65 Ohio St.3d 219, 221-222, 602 N.E.2d 1130 (1992). The court of appeals correctly recognized that the dispositive issue here is not standing but whether Holwadel and Johnson failed to exhaust an available remedy at law. *See State ex rel. Holwadel v. Hamilton Cty. Bd. of Elections*, 2015-Ohio-87, ¶ 13. The court of appeals reasonably concluded that it would be futile to require them to file a new challenge with the board based on exactly the same facts Siegel presented.

*See State ex rel. Cotterman v. St. Marys Foundry*, 46 Ohio St.3d 42, 44, 544 N.E.2d 887 (1989) ("a person need not pursue administrative remedies if such an act would be futile").

**{¶ 42}** We hold that the court of appeals was correct not to dismiss the case for lack of standing.

*Jurisdiction*

**{¶ 43}** The board argues that this court lacks subject-matter jurisdiction because Holwadel is seeking a declaratory judgment. This court lacks jurisdiction to hear claims that although presented in mandamus, seek what amounts to a declaratory judgment and a prohibitory injunction. *State ex rel. City of Brecksville v. Husted*, 133 Ohio St.3d 301, 2012-Ohio-4530, 978 N.E.2d 157, ¶ 9. In elections cases, this court considers whether the complaint seeks to prevent official action, making the relief injunctive in nature, or to compel it, which this court has jurisdiction to do through a writ of mandamus. *State ex rel. Evans v. Blackwell*, 111 Ohio St.3d 437, 2006-Ohio-5439, 857 N.E.2d 88, ¶ 20.

**{¶ 44}** In this case, the relators are seeking to compel an affirmative act by the board, namely the removal of Simes's name from the voter rolls. The decision cited by the board, *State ex rel. Knowlton v. Noble Cty. Bd. of Elections*, 125 Ohio St.3d 82, 2010-Ohio-1115, 926 N.E.2d 284, presents the exact opposite situation. Knowlton sought to *prevent* the board of elections from placing a candidate's name on the ballot and thus was seeking a prohibitory injunction, not a writ of mandamus. *Id*. at ¶ 14-16.

**{¶ 45}** We therefore reject the jurisdictional objection.

*Admissibility of Simes's Declaration*

**{¶ 46}** Holwadel argues that the admission of Simes's declaration at the board hearing was a violation of the Revised Code, but Holwadel has waived this argument.

**{¶ 47}** Issues that are not raised administratively cannot be raised in a mandamus action. *State ex rel. Burns Internatl. v. Indus. Comm.*, 10th Dist. Franklin No. 05AP-488, 2006-Ohio-6731, ¶ 3, citing *State ex rel. Quarto Mining Co. v. Foreman*, 79 Ohio St.3d 78, 679 N.E.2d 706 (1997). There was no objection at the administrative hearing when Simes's attorney read the declaration into the record. Therefore, any challenge to the admissibility of the declaration has been waived. *See State ex rel. Huffman v. Indus. Comm.*, 10th Dist. Franklin No. 10AP-1200, 2012-Ohio-1609, ¶ 5.

**{¶ 48}** Holwadel argues that the issue was not waived because at the outset of the hearing, the board noted "a standing objection for whatever issue." The purpose of a continuing or standing objection is to relieve a party who has unsuccessfully raised an objection from having to repeat the objection every time "testimony of the same class" is offered. *Brady v. Stafford*, 115 Ohio St. 67, 152 N.E. 188 (1926), paragraph two of the syllabus. A single continuing objection is not sufficient to preserve objections to multiple pieces of evidence where the admissibility determinations turn on different facts. *State v. Henness*, 79 Ohio St.3d 53, 59, 679 N.E.2d 686 (1997). In this case, the board granted its "standing objection" in response to an objection to a question that called for a legal conclusion, not in response to the introduction of the declaration.

**{¶ 49}** What the board attempted to do was excuse the parties from having to assert *any* objections in order to preserve them for appellate review. But a board has no authority to excuse litigants from the obligation to preserve issues for the record.

**{¶ 50}** Alternatively, Holwadel argues that the issue was preserved because it was raised during closing argument. But to preserve an issue for review, the party must make a *timely* objection. Evid.R. 103(A)(1). To be timely, the objection must be raised "at a time when such error could have been avoided or corrected by the trial court." *State v. Childs*, 14 Ohio St.2d 56, 236 N.E.2d 545 (1968), paragraph

12

three of the syllabus. An objection raised for the first time in closing argument is untimely. *In re Guardianship of Stein*, 157 Ohio App.3d 417, 2004-Ohio-2948, 811 N.E.2d 594, ¶ 12-13 (9th Dist.2004),[4] *rev'd on other grounds*, 105 Ohio St.3d 30, 2004-Ohio-7114, 821 N.E.2d 1008.

{¶ 51} We hold that Holwadel has waived this objection. In addition, we agree with the court of appeals that even if Simes's declaration was admitted in error, the testimony of Travis Estell provided enough evidence by itself to support the board's determination. *See State ex rel. Holwadel v. Hamilton Cty. Bd. of Elections*, 2015-Ohio-87, ¶ 18.

*Motion for Expedited Oral Argument*

{¶ 52} Holwadel moves for expedited oral argument, arguing that affirming the board will open the door to widespread voter fraud. She alleges that "out-of-state political activists" who come to Ohio for voter registration drives will themselves register to vote in Ohio during their transitory visits.

{¶ 53} Simes's situation is unique because he cut ties with Illinois and cancelled his voter registration there, so there is no risk of him voting in more than one state. Holwadel has presented no evidence that political activists who come to Ohio to work on a campaign will quit their jobs, give up their apartments, secure Ohio driver's licenses, and cancel their voter registrations in their states of origin. We conclude that oral argument is unwarranted in this case.

**Conclusion**

{¶ 54} For the foregoing reasons, we affirm the judgment of the court of appeals.

Judgment affirmed.

---

[4] In *Stein*, although two judges concurred in the judgment only, all three judges agreed that the issue was not preserved for appellate review. *See id.* at ¶ 30 (Carr, P.J., concurring in the judgment); *id.* at 33 (Slaby, J., concurring in the judgment).

O'CONNOR, C.J., and PFEIFER, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

O'DONNELL, J., dissents.

————————————

The Law Firm of Curt C. Hartman and Curt C. Hartman; and Finney Law Firm, L.L.C., and Christopher P. Finney, for appellants.

Joseph T. Deters, Hamilton County Prosecuting Attorney, and David T. Stevenson, Assistant Prosecuting Attorney, for appellees Hamilton County Board of Elections, Timothy M. Burke, Alex M. Triantafilou, Charles H. Gerhardt III, and Caleb A. Faux.

Ulmer & Berne, L.L.P., and Donald J. Mooney Jr., for appellee Randy Allen Simes.

————————————