[Cite as *17AP-230*, 2018-Ohio-2270.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. William L. Peterson, | : | |
| Relator, | : | |
| v. | : | No. 17AP-230 |
| Industrial Commission of Ohio and | : | (REGULAR CALENDAR) |
| Minute Men, Inc., | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on June 12, 2018

*Seaman & Associates, Michael I. Madden,* and *Shaun H. Kedir,* for relator.

*Michael DeWine*, Attorney General, and *Natalie Tackett,* for respondent Industrial Commission of Ohio.

*Barno Law, LLC, John C. Barno,* and *Jamison S. Speidel,* for respondent Minute Men, Inc.

IN MANDAMUS
ON OBJECTION TO MAGISTRATE'S DECISION

BRUNNER, J.

{¶ 1}  Relator, William L. Peterson, seeks a writ of mandamus to order respondent Industrial Commission of Ohio ("commission") to vacate the March 21, 2017 order of its staff hearing officer ("SHO") to the extent that it denies a January 6, 2017 C-9 request for a referral for a "psych consult" for "medication management" and to enter an amended order granting the January 6, 2017 C-9.  For the reasons following, we deny the request.

{¶ 2}  Peterson argues it was an abuse of discretion for the SHO to rely on a September 16, 2016 report and a November 7, 2016 addendum from psychologist

Michael A. Murphy, Ph.D., in denying a requested referral. Peterson contends that Dr. Murphy's reports are not some evidence on which the commission could rely to deny the C-9 request because Dr. Murphy is not a licensed psychiatrist.

{¶ 3} We referred this matter to a magistrate of this Court pursuant to Civ.R. 53(C) and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate issued the appended decision, including findings of fact and conclusions of law. The magistrate found that the record fails to show any effort on Peterson's part to raise the issue of Dr. Murphy's qualifications via his administrative appeals at the commission. The magistrate observed that the record contains no transcript of the administrative hearings and that Peterson had not submitted a memorandum of law on the issue before the SHO or the commission. Our magistrate stated, "[e]ven after the issuance of the SHO's order of March 21, 2017, [Peterson] submitted no memorandum to the commission in support of his appeal of the SHO's order of March 21, 2017." (App'x at ¶ 55.)

{¶ 4} Our magistrate concluded that Peterson's failure to raise the issue of Dr. Murphy's qualifications administratively at the commission bars him from raising the issue in this mandamus action. *State ex rel. Holwadel v. Hamilton Cty. Bd. of Elections,* 144 Ohio St.3d 579, 2015-Ohio-5306, ¶ 47, citing *State ex rel. Quarto Mining Co. v. Foreman*, 79 Ohio St.3d 78 (1997). The magistrate found that Peterson has failed to meet his burden to show entitlement to relief in mandamus and that it should accordingly be denied.

{¶ 5} Peterson timely filed an objection to the magistrate's findings and memorandum in support. Peterson's filing does not enumerate a specific objection, but contains the following statement:

> The issue on appeal is purely legal: whether a psychologist's opinion on the prescription of medication can constitute "some evidence" and rebut a psychiatrist's opinion in a workers' compensation claim.
>
> Peterson is arguing that psychologist Dr. Murphy's opinion on medication cannot constitute "some evidence" over his treating psychiatrist's opinion because a psychologist lacks the medical expertise and legal authority to prescribe medication.

(Footnote omitted.) (Feb. 21, 2018 Peterson's Obj. to Mag. Decision at 3-4.)

{¶ 6} The commission timely opposed Peterson's objection to the magistrate's decision, arguing that the decision was based on some evidence and that the magistrate had

decided the matter correctly.  Peterson's employer at the time of his industrial injury, Minute Men, Inc., was granted leave to file its response to Peterson's objection instanter.

{¶ 7}  Having examined the magistrate's decision, conducted an independent review of the record pursuant to Civ.R. 53, and undertaken due consideration of the objection, we overrule Peterson's objection.  We adopt the magistrate's decision as our own, including its findings of fact and conclusions of law.  In accordance with the magistrate's decision, we deny the requested writ.

*Objection overruled;*
*petition for writ of mandamus denied.*

BROWN, P.J., and DORRIAN, J., concur.

APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. William L. Peterson, | : | |
| Relator, | : | |
| v. | : | No. 17AP-230 |
| Industrial Commission of Ohio and | : | (REGULAR CALENDAR) |
| Minute Men, Inc., | : | |
| Respondents. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on January 30, 2018

*Seaman & Associates, Michael I. Madden,* and *Shaun H. Kedir,* for relator.

*Michael DeWine*, Attorney General, and *Natalie Tackett,* for respondent Industrial Commission of Ohio.

*Barno Law, LLC, John C. Barno,* and *Jamison S. Speidel,* for respondent Minute Men, Inc.

IN MANDAMUS

{¶ 8}   In this original action, relator, William L. Peterson, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate the March 21, 2017 order of its staff hearing officer ("SHO") to the extent that it denies a January 6, 2017 C-9 request for a referral for a "psych consult" for "medication management," and to enter an amended order granting the January 6, 2017 C-9. According to relator, the SHO's reliance on a September 16, 2016 report from psychologist Michael A. Murphy, Ph.D., and a November 7, 2016 addendum was an abuse of discretion because Dr.

Murphy is allegedly not competent as a psychologist to render the opinion on which the commission relied to deny the C-9 request.

Findings of Fact:

{¶ 9}  1. On December 20, 2011, relator sustained an industrial injury while employed with respondent Minute Men, Inc., a self-insured employer under Ohio's workers' compensation laws.  On his application for workers' compensation benefits, relator alleged that the injury occurred when he was "moving machinery and got pinned between a hopper [and] payloader."  He alleged an injury to his "chest [and] upper back."

{¶ 10} 2. The industrial claim (No. 11-866049) is allowed for multiple physical conditions:

> Closed fracture left fifth rib; contusion left chest wall; sprain/strain left shoulder; left ulnar neuropathy; left biceps tenosynovitis; substantial aggravation of pre-existing left shoulder impingement syndrome; left rotator cuff tendonitis.

{¶ 11} 3. On November 24, 2015, relator was examined by psychologist Raymond Richetta, Ph.D., who was employed by Weinstein & Associates, Inc.  In his six-page narrative report, Dr. Richetta opined that relator suffers from "Recurrent Depressive Disorder, Late Onset, with Pure Dysthymic Syndrome, Mild," and that the psychological condition is proximately caused by the industrial injury.  Dr. Richetta wrote "[h]e would benefit from undergoing psychotherapy and a psychotropic medication consultation."

{¶ 12} 4. On January 25, 2016, relator moved for an additional claim allowance.  In support, relator submitted the November 24, 2015 report of Dr. Richetta.

{¶ 13} 5. Relator's January 25, 2016 motion prompted a request from the employer to have relator examined by psychologist Douglas Pawlarczyk, Ph.D.  In his report dated February 23, 2016, Dr. Pawlarczyk supported allowance of the psychological condition.

{¶ 14} 6. Following an April 19, 2016 hearing, an SHO issued an order additionally allowing the claim for "recurrent depressive disorder, late onset, with pure dysthymic syndrome, mild."  The SHO's order specifies reliance on the February 23, 2016 report of Dr. Pawlarczyk.

{¶ 15} 7. On May 11, 2016, another SHO mailed an order refusing the employer's appeal from the SHO's order of April 19, 2016.

{¶ 16} 8. Earlier, on March 31, 2016, relator first saw psychologist Kent Rozel, Ph.D., who was also employed by Weinstein & Associates, Inc.

{¶ 17} 9. On April 19, 2016, Dr. Rozel completed a form provided by the Ohio Bureau of Workers' Compensation ("bureau") captioned "Request for Medical Service Reimbursement or Recommendations for Additional Conditions for Industrial Injury or Occupational Disease." The bureau designates the form as a C-9. On the C-9, Dr. Rozel requested approval for 13 more "individual psychotherapy" sessions to be conducted over a six-month period. The self-insured employer approved Dr. Rozel's April 19, 2016 C-9 request indicating that the sessions should be completed by September 30, 2016.

{¶ 18} 10. Relator saw Dr. Rozel on May 12, June 9, and June 23, 2016.

{¶ 19} 11. On June 24, 2016, Dr. Rozel completed another C-9 on which he requested approval for "Referral for a Psych. Consult for Medication MGMT [sic] with a BWC Certified Provider." The request was for one consult. On the C-9, the self-insured employer approved the C-9 request and indicated that the consult must be completed by September 1, 2016.

{¶ 20} 12. On July 14, 2016, Dr. Rozel completed a Medco-14 supporting TTD compensation. On August 2, 2016, relator moved for the payment of TTD compensation based on Dr. Rozel's Medco-14.

{¶ 21} 13. Prompted by relator's request for TTD compensation, at the employer's request, relator was examined by Dr. Murphy on September 16, 2016. In his nine-page narrative report, at page three, Dr. Murphy states:

> **Unrelated Alcohol/Drug Abuse:** The Injured Worker reports he consumes six or more beers a day. His use of alcohol results in impairment. He reports use of marijuana (last used - "I can't remember"), cocaine, and crack cocaine (mid-1980s). When asked if he had used any other drugs in the past, he stated, "I can't remember." He underwent a six-month inpatient drug rehab at Fresh Start (1998). He again underwent drug rehab in Summit County (2014). He has attended AA and NA in the past. He smokes five cigarettes a day.

(Emphasis sic.)

{¶ 22} In his September 16, 2016 narrative report, Dr. Murphy responds to five questions:

**OPINION:** The following opinion is based on a reasonable degree of psychological certainty.

**Question 1: Based on your evaluation and review of the medical records, is further individual psychotherapy necessary and appropriate for treatment of this claimant and the allowed conditions? If so, please specify your recommended treatment plan including frequency, duration, and expected outcome. If no further treatment is necessary, please explain why not.**

This claim is recognized for Recurrent Depressive Disorder, Late Onset, with Pure Dysthymic Syndrome, Mild. I found extensive non-injury factors (see Unrelated Stressors and Medical Conditions). He could not recall dates of two DUIs and he reports he owes roughly $7000 in fines to obtain his driver's license (includes past due child support).

Alcohol programs were reported in 1998 and 2014. The Injured Worker continues to drink "six or a few more" beers per day. A history of substance abuse was reported (marijuana, cocaine, and crack cocaine, 1980s). When questioned regarding his last use of marijuana, he stated, "I can't remember."

He is currently using alcohol and Lyrica. The effects likely lead to sedation and mimic depression.

The Injured Worker has been under psychological care since June/July 2016 (per the Injured Worker). However, treatment is documented in the records as beginning 3/31/2016 (see Dr. Rozel).

This Injured Worker is not being forthright in his reporting of his history and current treatment.

At this time, his treatment complies with ODG (2012) parameters. Treatment should not be abruptly discontinued. Four to five additional sessions are recommended to help prepare the Injured Worker for termination of services.

He should be referred to AA for his alcohol abuse condition (unrelated).

**Question 2: In your professional opinion, is continued use of medication necessary and**

**appropriate for treatment of this claimant and the allowed psychological conditions? Please explain why or why not.**

According to the Injured Worker, he was not prescribed a psychotropic medication.

However, records indicate he has attempted to fill prescriptions for Mirtazapine, Citalopram, and Trazodone (Dr. Kapalczynski). I documented the Injured Worker's extensive history (legal and treatment) regarding alcohol/substance abuse. He continues to drink despite treatment. His use of Lyrica with alcohol should be monitored. He should be referred to AA.

Psychotropic medication (i.e., Mirtazapine, Citalopram, and Trazodone) is not recommended given this history of substance/alcohol abuse.

**Question 3: Based on your evaluation and review of the medical records, is there sufficient objective evidence to support Temporary Total Disability from 3/31/2016 to 7/1/2016 and continuing? Please provide rationale to support your opinion.**

This Injured Worker began treatment on 3/31/2016. Temporary total disability is supported to 7/1/2016. Treatment specific to the allowed DSM-V condition has been provided.

His continued use of alcohol with prescription medical compromises his response to treatment.

**Question 4: Based solely on the allowed psychological condition, is Mr. Peterson able to return to full duty work? If not, are any limitations/restrictions necessary and appropriate? If so, please specify those restrictions and how long they should remain in effect.**

The Injured Worker's DSM-V condition is not work-prohibitive. Recall, he last worked in 2014. He is capable of employment in his former capacity based on his DSM-V condition.

**Question 5: In your professional opinion, is the allowed psychological condition at maximum**

> **medical improvement (MMI)? Maximum medical improvement means the condition has stabilized and no fundamental, functional or physiological change can be expected despite continued medical treatment and/or rehabilitation. Please present rationale. If he is not at maximum medical improvement, when do you anticipate maximum medical improvement will be reached?**
>
> The Injured Worker has reached maximum medical improvement for his DSM-V condition. A reasonable course of care compliant with ODG parameters has been offered. His primary diagnosis is Alcohol Abuse, which is unrelated and was well-established pre-injury. His DSM-V condition is mild (see Aspects of Residual Functioning).

(Emphasis sic.)

{¶ 23} 14. Following a September 30, 2016 hearing, a district hearing officer ("DHO") issued an order awarding TTD compensation for the closed period starting March 31, 2016 through the hearing date. The DHO also terminated TTD compensation effective September 30, 2016 based on a finding that the psychological condition has reached maximum medical improvement ("MMI"). The DHO's order states reliance on Dr. Murphy's September 16, 2016 report and a Medco-14 from Dr. Rozel.

{¶ 24} 15. Relator administratively appealed the September 30, 2016 order of the DHO.

{¶ 25} 16. Relator obtained a rebuttal report from Dr. Rozel dated October 23, 2016. In his three-page report, Dr. Rozel states:

> Even Dr. Murphy agreed that Mr. Peterson deserved a period of TTD. I suggest that he be given the benefit of the doubt and be allowed to receive appropriate treatment for his depression, prior to agreeing with Dr. Murphy that he is currently MMI. I suggest that he should be re-evaluated in three months, which will be long enough to see if he will benefit from treatment and see if he will be able to stop drinking. Dr. Murphy's opinion that his period of TTD should cease as of 07/21/2016 does not appear to be supported by any evidence. As I was seeing him regularly during that time, I can attest that his depression actually got worse during the month of August because he was thought to have cancer, in addition to Hepatitis C, and he became quite upset about the uncertainty of his diagnosis and having to undergo extensive

diagnostic testing. He has improved from the psychotherapy he has received and will require further treatment to maintain his gains and to promote his abstinence from alcohol, in addition to assisting him to better cope with his depression and chronic pain.

He also has been seeing our psychiatrist the past couple of months, and if he is actually able to fill his prescription, the medications he is receiving should also lead to continued improvement in his psychological symptoms and in his functional capacity.

At the present time, I believe that William Peterson is currently temporarily and totally disabled from his allowed conditions of Recurrent Depressive Disorder, Late Onset, With Pure Dysthymic Syndrome, Mild. I believe that Mr. Peterson has not reached a plateau in his recovery from depression and that he will continue to improve in his mental status and functional capacity with continued treatment. He has not reached MMI status.

{¶ 26} 17. The employer requested an addendum report from Dr. Murphy. Dr. Murphy's addendum is dated November 7, 2016:

**OPINION:** The following opinion is based on a reasonable degree of psychological certainty.

**Question 1: Please review the attached narrative report by Dr. Ken Rozel and submit an addendum report that offers your opinion regarding Dr. Rozel's 10/23/2016 report.**

I stand by my opinion as advanced in my report of 09/16/2016. I submitted a fact-based report. I found no information submitted (including that by Dr. Rozel) that would change my opinion.

This Injured Worker has been involved with substance abuse treatment pre and post-injury. He reported the use of alcohol (six or more beers/day) at the time of my examination. He could not recall the last time he used marijuana. His substance abuse was well-established pre-injury (see Unrelated Alcohol/Drug Abuse and Legal History). Depression is often a comorbid condition to longstanding substance abuse conditions.

> **The Injured Worker is approaching five years post-injury. He last worked in summer of 2014.**
>
> I documented extensive unrelated stressors (see Unrelated Stressors and Medical Conditions). Objective testing (see MCMI-III) indicated moderate exaggeration. Aside from the Major Depression scale, alcohol dependence and drug dependence are the next-most-prominent scale scores on the Axis I scales of the MCMI-III.
>
> I stand by my opinion advanced on 9/16/2016 and the factual statements made therein.

(Emphasis sic.)

{¶ 27} 18. Following a November 9, 2016 hearing, an SHO issued an order affirming the DHO's order of September 30, 2016. The SHO awarded TTD compensation for the period commencing March 31 through September 30, 2016, the date of the district level hearing. TTD compensation was terminated effective September 30, 2016 on grounds that the allowed psychological condition has reached MMI. The SHO's order of November 9, 2016 states reliance on the September 16 and November 7, 2016 reports of Dr. Murphy.

{¶ 28} 19. Earlier, on August 16, 2016, relator initially saw psychiatrist Przemyslaw L. Kapalczynski, M.D., at the referral of Weinstein & Associates. In his office notes of August 16, 2016, Dr. Kapalczynski wrote:

> He recent[ly] was thought that he may have cancer; he stated that he was diagnosed with "low grade leukemia." He recently was diagnosed with hepatitis C. He reported poor sleep, poor appetite, feeling very stressed out and overwhelmed. He reported memory problems, problems with concentration, some anhedonia. He reported no suicidal or homicidal thoughts. He has never experienced any psychotic symptoms.
>
> * * *
>
> He drinks alcohol every day (several beers) despite HCV diagnosis. He has previously spent 11 years in prison on drug related charges. He used to abuse many different illicit drugs including cocaine, but has stopped.
>
> * * *
>
> Medication:

> Start Remeron 7.5 to 15mg HS targeting depressive symptoms and insomnia.

{¶ 29} 20. On September 13, 2016, relator again saw Dr. Kapalczynski. In his office note of that date, Dr. Kapalczynski wrote:

> He reported that he was not able to obtain the Remeron due to difficulties with the BWC process. He remains depressed, sometimes anxious, but has fairly good coping skills and remains future oriented. Continues to have irritability, wants to address it with medications. Sleep also remains poor. He did not report any suicidal or homicidal thoughts. He was rational and logical. Medication education was provided. He agreed to start Celexa and Trazodone instead.

{¶ 30} 21. On September 15, 2016, Dr. Kapalczynski completed a C-9 requesting approval for "[follow-up] Medication Management." He requested approval for six monthly sessions.

{¶ 31} 22. The self-insured employer denied the September 15, 2016 C-9 request. In a letter to relator, the employer's managed care organization ("MCO") explained the decision:

> [T]he requested services do not appear to be medically indicated or appropriate. This [Injured Worker] had an IME done 9/16/16 by Michael Murphy, Ph.D. and Dr. Murphy opines that this [Injured Worker's] primary diagnosis is Alcohol Abuse which is unrelated and well established pre-injury and that Psychotropic medications are not recommended given his history of substance/alcohol abuse.

{¶ 32} 23. Following a November 9, 2016 hearing, a DHO issued an order denying relator's September 15, 2016 C-9 request. The DHO's order explains:

> The District Hearing Officer relies on the opinions of Michael Murphy, Ph.D., as stated in his 09/16/2016 narrative. Dr. Murphy opines that the use of psychotropic medication is not recommended given the Injured Worker's history of substance and alcohol abuse.

{¶ 33} 24. Relator administratively appealed the November 9, 2016 order of the DHO.

{¶ 34} 25. Following a December 21, 2016 hearing, an SHO issued an order affirming the November 9, 2016 order of the DHO. The SHO's order of December 21, 2016 explains:

> It is the order of the Staff Hearing Officer that the requested treatment pursuant to the 09/15/2016 C-9 request for treatment from P. Kapalczynski, M.D., is denied. It is the decision of the Staff Hearing Officer to deny the requested medical management one time a month for six months as there is insufficient justification for the requested medication management. The 09/16/2016 report from Michael Murphy, Ph.D., indicated that the Injured Worker had a history of substance and alcohol abuse. The C-9 request for treatment from Dr. Kapalczynski does not explain or detail why medication management is needed and what precautions would be used in the medication management protocol. The Staff Hearing Officer finds that there is insufficient evidence to medically justify the requested medication management one time a month for six months at the present time.

{¶ 35} 26. On January 12, 2017, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of December 21, 2016.

{¶ 36} 27. Earlier, on December 6, 2016, a C-9 was completed by Carrie Turbow, LISW-S, who is employed by the offices of Weinstein & Associates. On the C-9, Turbow requested approval for 14 monthly sessions of psychotherapy.

{¶ 37} 28. By letter dated December 16, 2016, the self-insured employer denied the December 6, 2016 C-9. The employer's letter explains:

> [T]he requested services do not appear to be medically indicated or appropriate. This [Injured Worker] had an IME done 9/16/16 by Michael Murphy, Ph.D. and Dr. Murphy opines that this [Injured Worker's] primary diagnosis is Alcohol Abuse which is unrelated and well established pre-injury. The 11/7/16 addendum to this report reviewed recent medical and Dr. Murphy's opinion did not change and remains that his primary diagnosis is Alcohol Abuse, that his DSM-V diagnosis is mild.

{¶ 38} 29. On January 6, 2017, Turbow completed another C-9. Turbow requested approval for "Referral for a Psych. Consult for Medication Management w/a BWC Certified Provider."

{¶ 39} 30. By letter dated January 9, 2017, the self-insured employer denied the January 6, 2017 C-9. The letter explained:

> *Per review of the medical documentation on file, the requested services were previously requested and approved via C9 dated 6/24/16 by Kent Rozel Ph.D. Mr. Peterson underwent the approved psychological consultation on 8/16/16 by Przemyslaw Kapalczynski, M.D. Subsequent medication management visits have been denied per SHO hearing dated 12/21/16.*
>
> *Therefore the request for an additional psychological consult is excessive and unnecessary and fails to meet Miller criteria as reasonably necessary and cost effective for the treatment of the allowed condition.*

(Emphasis sic.)

{¶ 40} Relator moved for a hearing on the two C-9's.

{¶ 41} 31. On February 8, 2017, a DHO heard the two C-9's dated December 6, 2016 and January 6, 2017. Following the hearing, the DHO issued an order denying the two C-9's. The DHO's order explains:

> It is the order of the District Hearing Officer that the two C-9 Requests for Medical Service Reimbursement or Recommendation for Additional Conditions for Industrial Injury or Occupational Disease, filed by Injured Worker on 12/16/2016 [sic] and 01/09/2017 [sic], are denied.
>
> It is the order of the District Hearing Officer that the C9's of Carrie Turbow, LISW, thereby requesting individual psychotherapy and follow-up for a total of 14 sessions over a period of six months and the request for a referral for a psych consult for medication management with a Bureau of Workers' Compensation certified provider x1 consult are denied.
>
> The District Hearing Officer does not find the requested services are reasonably related, medically necessary and appropriate based on the allowed conditions in this claim.
>
> The District Hearing Officer relies on the reports of Michael Murphy, Ph.D., dated 09/16/2016 and 11/07/2016. It was Dr. Murphy's opinion that the allowed psychological condition has reached maximum medical improvement and the Injured Worker's primary diagnosis at the time of his examination was

alcohol abuse, which is unrelated and was well-established pre-injury. Dr. Murphy further opined that the Injured Worker was not being prescribed a psychotropic medication at the time of the examination.

The District Hearing Officer does not find any contemporaneous medical evidence has been submitted thereby providing any rationale as to the medical necessity and justification for an additional 14 psychotherapy sessions at this time.

While the District Hearing Officer does not agree that the request for a psych consult for medication management is barred under the doctrine of res judicata, the District Hearing Officer does find that the issue for medical management at the rate of one time a month for a period of six months, as requested in a C-9 of 09/15/2016, was denied by the Industrial Commission at a hearing adjudicated at 12/21/2016. At that time, the Staff Hearing Officer denied the request for six medical management visits based on the fact that the Injured Worker has a history of substance and alcohol abuse and no explanation was provided why medication management was necessary and what precautions would be used in the medication management protocol.

The District Hearing Officer finds that a new and distinct C-9 is at issue for today's hearing. However, the District Hearing Officer finds there would be an overlap in the pending request as it relates to the previously denied six sessions.

Likewise, the District Hearing Officer does not find any contemporaneous medical evidence has been submitted thereby providing any rationale as to the medical necessity and justification for the requested psych consult for medication management.

Therefore, based on the totality of evidence in file, the C-9s are denied to the extent of this order.

This order is based on the reports of Dr. Murphy, dated 09/16/2016 and 11/07/2016 and evidence and arguments adduced at today's hearing.

{¶ 42} 32. Relator administratively appealed the DHO's order of February 8, 2017.

{¶ 43} 33. Following a March 21, 2017 hearing, an SHO issued an order affirming the DHO's order of February 8, 2017. The SHO's order of March 21, 2017 explains:

It is the order of the Staff Hearing Officer that the C-9 Request for Medical Service Reimbursement or Recommendation for Additional Conditions for Industrial Injury or Occupational Disease filed on 12/16/2016 [sic] is denied and the C-9 request for treatment filed on 01/09/2017 [sic] is denied.

It is the decision of the Staff Hearing Officer to deny the requested psychotherapy treatments pursuant to the 12/06/2016 C-9 report from Carrie Turbow, LISW. The decision to deny the requested psychotherapy treatments and follow up pursuant to the 12/06/2016 C-9 report of Ms. Turbow is based upon the reports of Michael Murphy, Ph.D., dated 09/16/2016 and 11/07/2016. It was the opinion of Dr. Murphy that the requested psychotherapy treatments were not necessary or appropriate at the present time. The Staff Hearing Officer relies upon the reports of Dr. Murphy.

It is the decision of the Staff Hearing Officer to deny the request for a referral for a psych consult for medication management pursuant to the 01/06/2017 C-9 report from Ms. Turbow. The decision to deny the referral for a psych consult for medication management is based upon the 09/16/2016 and 11/07/2016 reports of Dr. Murphy. It was the opinion of Dr. Murphy that the referral for psych consult for medication management was not necessary or appropriate at the present time.

There was an argument that the 01/06/2017 request for referral for medication management was barred pursuant to the doctrine of res judicata. The Staff Hearing Officer does not find that the 01/06/2017 request for referral for medication management by Ms. Turbow is barred by the doctrine of res judicata. There was a previous C-9 dated 09/15/2016 adjudicated which requested six medical management visits one time per month for six months. The Staff Hearing Officer finds that the 09/15/2016 request is a separate and distinct request and is not a bar pursuant to res judicata from adjudicating the request pursuant to the 01/06/2017 C-9 report from Ms. Turbow. It is the decision of this Staff Hearing Officer to deny the request for a referral for a psych consult for medication management pursuant to the 01/06/2017 C-9 report of Ms. Turbow on the merits relying upon the report of Dr. Murphy dated 09/16/2016 and 11/07/2016.

Therefore, based upon the reports of Dr. Murphy dated 09/16/2016 and 11/07/2016, the Staff Hearing Officer denies

the requested treatment pursuant to the 12/06/2016 C-9 report and the 01/06/2017 C-9 report.

{¶ 44} 34. On April 13, 2017, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of March 21, 2017.

{¶ 45} 35. Earlier, on April 3, 2017, relator, William L. Peterson, filed this mandamus action.

Conclusions of Law:

{¶ 46} As earlier noted, the SHO's order of March 21, 2017 relies on the reports of Dr. Murphy, a licensed psychologist, in denying the January 6, 2017 C-9 request for a psychiatric consult for medication management. Relator contends here that Dr. Murphy's reports are not some evidence on which the commission can rely to deny the C-9 request because Dr. Murphy is not a licensed psychiatrist.

{¶ 47} Citing R.C. 4732.20 and 2743.43, relator asserts that Dr. Murphy is not authorized by law to prescribe medication. (Reply brief at 7.) Relator further asserts that Dr. Murphy is not authorized to "prescribe psychiatric medication, and lacks the necessary expertise to determine whether psychiatric medication is necessary or appropriate, as well as its interaction with other substances." (Relator's brief at 10.)

{¶ 48} Relator concludes that a writ must issue ordering the commission to vacate that part of the SHO's order of March 21, 2017 that denies the C-9 request for a psychiatric consult for medication management, and to enter an amended order that grants the January 6, 2017 C-9 request.

{¶ 49} Because relator failed to raise the above-described issue administratively at the commission, it cannot be raised in this mandamus action.

{¶ 50} Issues that are not raised administratively cannot be raised in a mandamus action. *State ex rel. Holwadel v. Hamilton Cty. Bd. of Elections,* 144 Ohio St.3d 579, 2015-Ohio-5306, ¶ 47, citing *State ex rel. Quarto Mining Co. v. Foreman*, 79 Ohio St.3d 78 (1997).

{¶ 51} In mandamus, the relator has the burden to establish a clear legal right to the requested relief, a corresponding clear legal duty on the part of the commission, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Waters v. Spaeth,* 131 Ohio St.3d 55, 2012-Ohio-69, ¶ 16.

{¶ 52} The standard of proof in mandamus cases is proof by clear and convincing evidence. *State ex rel. Stevens v. Indus. Comm.,* 10th Dist. No. 10AP-1147, 2012-Ohio-4408, ¶ 7, citing *State ex rel. Doner v. Zody,* 130 Ohio St.3d 446, 2011-Ohio-6117, ¶ 55.

{¶ 53} Analysis is focused on the February 8, 2017 order of the DHO and the March 21, 2017 order of the SHO. Neither order indicates or suggests that relator raised the issue of whether the reports of Dr. Murphy fail to provide some evidence on which the commission could rely because Dr. Murphy is not a psychiatrist.

{¶ 54} Significantly, the record fails to show any effort on the report of relator to raise the issue on the administrative appeal of the DHO's order of February 8, 2017 to the SHO. Again, the SHO's order of March 21, 2017 is silent on the issue.

{¶ 55} It can be observed that the record contains no transcript of either hearing. Moreover, relator submitted no memorandum of law on the issue on the appeal to the SHO. Even after the issuance of the SHO's order of March 21, 2017, relator submitted no memorandum to the commission in support of his appeal of the SHO's order of March 21, 2017.

{¶ 56} The absence of a transcript of either hearing does not assist relator here in meeting his burden of proof. In that regard, the *Stevens* court states:

> [W]e have no transcript of either hearing. Nor does our record reflect any steps taken by relator to complete the record in any other ways. A silent record does not change the applicable burdens under the facts of this case, however. The relator, not the respondent, bears the burden to prove entitlement to mandamus relief, and a relator may not avoid that burden simply by noting the absence of a transcript.

*Id.* at ¶ 11.

{¶ 57} Given the above-analysis, it is clear that relator has failed to meet his burden to show that the issue he endeavors to present here was raised administratively before the commission.

{¶ 58} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
KENNETH W. MACKE

## NOTICE TO THE PARTIES

**Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).**