[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Marmaduke v. Ohio Police & Fire Pension Fund,* Slip Opinion No. 2016-Ohio-5550.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-5550

THE STATE EX REL. MARMADUKE, APPELLANT, *v.* OHIO POLICE & FIRE PENSION FUND ET AL., APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Marmaduke v. Ohio Police & Fire Pension Fund,* Slip Opinion No. 2016-Ohio-5550.]

*Writ of mandamus—Disability benefit—Some evidence in the record supported decision of pension fund and its board—Judgment affirmed.*

(No. 2015-1278—Submitted April 5, 2015—Decided August 30, 2016.)

APPEAL from the Court of Appeals for Franklin County, No. 14AP-489, 2015-Ohio-2491.

_____

**Per Curiam.**

{¶ 1} We affirm the Tenth District Court of Appeals' denial of a writ of mandamus to appellant, Robert G. Marmaduke II. Marmaduke seeks a writ ordering appellees, the Ohio Police & Fire Pension Fund ("OP&F") and its board of trustees,

to vacate the board's order awarding him a permanent-partial disability benefit and to enter an order awarding him a permanent-total disability benefit.

{¶ 2} There is some evidence in the record that Marmaduke was able to perform the duties of a gainful occupation despite his disabling, duty-related conditions. Therefore, the court of appeals was correct in affirming the board's determination that he was entitled to a permanent-partial, rather than permanent-total, disability benefit.

*Facts*

**OP&F Disability Retirement**

{¶ 3} The OP&F is run by a nine-member board of trustees that considers applications for disability benefits from members. R.C. 742.03(B) and 742.38; Ohio Adm.Code 742-3-05. After a member files an application and medical and vocational reports are provided, the board forwards the material to the Disability Evaluation Panel ("DEP"). Ohio Adm.Code 742-3-05(A)(13) and (C)(6). The DEP consists of three members of the board and at least two nonvoting members: one must be a physician, and the other must be a vocational expert. Ohio Adm.Code 742-3-05(A)(13). The DEP evaluates the application based on the American Medical Association's Guides to the Evaluation of Permanent Impairment and other objective sources. Ohio Adm.Code 742-3-05(A)(9) and (B)(2). The DEP experts examine the applicant and issue reports on their findings. After reviewing all the materials, the DEP makes a recommendation to the OP&F board. Ohio Adm.Code 742-3-05(B)(5) and (C)(6). The board makes an independent initial determination based on review of the record or may request additional supporting materials and another examination of the applicant. Ohio Adm.Code 742-3-05(C)(6).

{¶ 4} The applicant may accept, waive, or appeal the board's initial determination. Ohio Adm.Code 742-3-05(D) and (E). If the applicant appeals, he or she must file new supporting materials within 60 days of filing the notice of

2

appeal. Ohio Adm.Code 742-3-05(E)(3). Based on this new supporting material, OP&F may request that the applicant undergo another physical or vocational examination or that the experts provide addenda to their earlier reports. Ohio Adm.Code 742-3-05(E)(4). The resulting materials are sent to the DEP experts, who make updated recommendations to the board. Ohio Adm.Code 742-3-05(E)(5). The applicant is entitled to a hearing on the appeal. *Id.*

**{¶ 5}** The board will then affirm or modify the initial determination or order additional examination or documentation. Ohio Adm.Code 742-3-05(E)(6). The decision on appeal is final. Ohio Adm.Code 742-3-05(E)(6)(d). The applicant may accept or waive any award and continue working, or file a mandamus action. Ohio Adm.Code 742-3-05(E)(7).

**Marmaduke's Background, Injury, and Application**

**{¶ 6}** Marmaduke has a bachelor's degree in biology and some graduate-school education. He worked at various jobs before joining the Akron fire department. Marmaduke was a medic with the department for five years and then became a fire inspector. He was promoted to lieutenant in 2001 and captain in 2006. He became a safety-inspector instructor in 2007 and continued in that capacity until he retired in 2011.

**{¶ 7}** On January 28, 2009, Marmaduke was shoveling snow at work when he suddenly experienced extreme pain on the right side of his head. At the emergency room, doctors determined that he had an acute brain bleed. He was hospitalized and later spent time in rehabilitation. Marmaduke was diagnosed with right temporal intracerebral hemorrhage. This condition resulted in decreased coordination and dexterity, problems with fine motor skills in the left hand, and a left visual-field defect. In June 2009, he had surgery to correct an arterial venous malformation (an abnormal connection between an artery and a vein).

**{¶ 8}** Marmaduke returned to work half time in November 2009 and was employed full time by January 2010 through a transitional work-assignment

program.  In November 2010, Marmaduke was terminated "due to lack of significant progress" in having his medical restrictions relaxed.  However, Marmaduke believed that the termination had been motivated by the fire chief's dislike of him.  Marmaduke filed a grievance and was reinstated with back pay.  He returned to work in May 2011 but retired in November of that year.

{¶ 9} Marmaduke filed a disability-benefit application with OP&F in April 2012.  The application set forth various conditions, including the visual-field deficit. The DEP found that Marmaduke had a 31 per cent disabling whole-person impairment and a 57 per cent non-disabling whole-person impairment. Finding that Marmaduke was permanently and partially disabled, the DEP recommended awarding Marmaduke a permanent-partial disability benefit under R.C. 742.38(D)(2).

{¶ 10} Marmaduke appealed, claiming that the visual-field deficit renders him totally and permanently disabled.  However, the DEP considered the views of the board's medical and vocational experts, who agreed with the recommendation of the DEP.  None of the original examining physicians significantly changed their reports, and the board reaffirmed its award of a permanent-partial disability benefit.

{¶ 11} Marmaduke filed this mandamus action in the Tenth District Court of Appeals, asserting that he had been wrongfully denied a permanent-total disability benefit.  A magistrate found that Marmaduke had not demonstrated that his disability was total and concluded that the board had not abused its discretion by granting him the permanent-partial disability benefit.  The magistrate recommended that the court deny the writ.

{¶ 12} Over Marmaduke's objections, the court of appeals agreed with the magistrate's recommendation and held that because some evidence supported the board's decision, the board had not abused its discretion in awarding Marmaduke a permanent-partial disability retirement benefit. The court adopted the magistrate's

legal conclusions and denied the writ. Marmaduke appealed to this court as of right, and we affirm.

*Analysis*

**Request for Oral Argument**

{¶ 13} Marmaduke has requested oral argument. Oral argument in a direct appeal is discretionary. S.Ct.Prac.R. 17.02(A). In exercising this discretion, this court considers whether the case involves a matter of great public importance, complex issues of law or fact, a substantial constitutional issue, or a conflict among the courts of appeals. *State ex rel. Manley v. Walsh*, 142 Ohio St.3d 384, 2014-Ohio-4563, 31 N.E.3d 608, ¶ 16, citing *Appenzeller v. Miller*, 136 Ohio St.3d 378, 2013-Ohio-3719, 996 N.E.2d 919, ¶ 4.

{¶ 14} This case involves a straightforward application of the standard for abuse of discretion by the OP&F board. We therefore deny the request.

**Mandamus**

{¶ 15} To be entitled to a writ of mandamus, Marmaduke must establish a clear legal right to the requested relief, a clear legal duty on the part of the OP&F to provide it, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6. Marmaduke must prove that he is entitled to the writ by clear and convincing evidence. *Id.* at ¶ 13.

{¶ 16} " 'Because the final OP&F board decision is not appealable, mandamus is available to correct an abuse of discretion by the board in denying disability benefits.' " *State ex rel. Kolcinko v. Ohio Police & Fire Pension Fund*, 131 Ohio St. 3d 111, 2012-Ohio-46, 961 N.E.2d 178, ¶ 2, quoting *State ex rel. Tindira v. Ohio Police & Fire Pension Fund*, 130 Ohio St.3d 62, 2011-Ohio-4677, 955 N.E.2d 963, ¶ 28. *See also* Ohio Adm.Code 742-3-05(E)(7)(c). Therefore, Marmaduke has brought an appropriate cause of action to challenge the board's decision.

**{¶ 17}** However, to prevail, Marmaduke must show that he has a clear legal right to a permanent-total disability benefit rather than to a permanent-partial disability benefit. "A clear legal right to the requested relief in mandamus exists 'where the board abuses its discretion by entering an order which is not supported by "some evidence." ' " *Kolcinko* at ¶ 2, quoting *Kinsey v. Bd. of Trustees of Police & Firemen's Disability & Pension Fund of Ohio*, 49 Ohio St.3d 224, 225, 551 N.E.2d 989 (1990).

**{¶ 18}** OP&F does not dispute that Marmaduke's disability is duty-related and that the disability is permanent. The only point of contention appears to be whether the disability mandates a permanent-total or permanent-partial disability benefit.

**{¶ 19}** Under the appropriate statutory and rule definitions, Marmaduke is eligible for a permanent-partial disability, but not for a permanent-total disability benefit.

> "Totally disabled" means a member of the fund is unable to perform the duties of any gainful occupation for which the member is reasonably fitted by training, experience, and accomplishments. Absolute helplessness is not a prerequisite of being totally disabled.

> "Permanently disabled" means a condition of disability from which there is no present indication of recovery.

R.C. 742.38 (D).

> "Partial disability" shall mean a condition of disability with respect to which the board finds the applicant is prevented from

6

performing the member's official police or fire duties and member's earnings capacity is impaired.

Ohio Admin.Code 742-3-05(A)(8).

{¶ 20} Thus, the question is whether Marmaduke can work at all and whether he can return to his original job. The parties dispute whether Marmaduke's visual-field defect prevents him from performing his original job duties. For example, Marmaduke's attending physician, Dr. Hayek, specifically commented that Marmaduke's vision loss "prevents him from driving in Emergency Mode (Lights & sirens) which prevents him from returning to his previous job description without restrictions." OP&F argues that Marmaduke does not need to drive emergency vehicles to do his job as fire chief. That job description provides that "[a]n employee in this class commands a battalion of fire companies: directs the maintenance and operation of fire stations: the inspection, testing, and maintenance of company apparatus and equipment; and directs all work of the companies in emergency operations until relieved by a superior officer."

{¶ 21} However, when Marmaduke actually went back to work, he participated in a light-duty/transitional work program and did not return to his position as fire chief. He was terminated from this light-duty work, although he challenged the termination and was later reinstated. There is no evidence in the record that he returned to his original job as a fire chief rather than the light-duty job. Indeed, the department terminated him from the light-duty job specifically "due to a lack of significant progress." In other words, his employer apparently did not think him capable of performing the job duties of his position as fire chief.

{¶ 22} Marmaduke is capable of performing the duties of gainful employment, as he was in a light duty/transitional position for several months. He therefore is not totally disabled under R.C. 742.38(D). The OP&F board did not

abuse its discretion in finding Marmaduke partially disabled under Ohio Adm. Code 742-3-05(A)(8).

{¶ 23} We agree with the conclusion of the court of appeals that there is some evidence in the record that Marmaduke could perform the duties of "any gainful occupation for which [he] is reasonably fitted by training, experience, and accomplishments." R.C. 742.38(D).

**Motions**

{¶ 24} Since final briefing, Marmaduke, acting pro se, has filed a motion for judicial notice in support of appellant's brief, and two amended versions of the same motion. OP&F has filed a motion to strike these motions.

{¶ 25} The motions for judicial notice appear to contain additional argument and evidence regarding the case. S.Ct.Prac.R. 16.08 provides that "merit briefs shall not be supplemented." To the extent that Marmaduke's arguments in the supplement are based on new legal authority, he could have filed "a citation to the relevant authority," but he "shall not file additional argument." *Id.*

{¶ 26} We therefore grant the motion to strike and deny the motions for judicial notice.

*Conclusion*

{¶ 27} The record includes some evidence that Marmaduke is capable of performing the duties of gainful employment. Therefore, it was not an abuse of discretion for OP&F to award him a permanent-partial disability benefit under R.C. 742.38(D)(2).

Judgment affirmed.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Robert G. Marmaduke, II, pro se.

Michael DeWine, Attorney General, and John J. Danish and Mary Therese J. Bridge, Assistant Attorneys General, for appellees.

_____