[Cite as *State v. Jones*, 2020-Ohio-2884.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2019-03-020 |
| | : | O P I N I O N |
| - vs - | | 5/11/2020 |
| | : | |
| ANDREW JONES, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 17CR33514

David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for appellee

Bryan Scott Hicks, P.O. Box 359, Lebanon, Ohio 45036, for appellant


**RINGLAND, J.**

{¶ 1}  Appellant, Andrew Jones, appeals his conviction in the Warren County Court of Common Pleas for illegal voting.  For the reasons outlined below, we affirm.

{¶ 2}  Prior to September 2015, Jones and his wife ("Wife") jointly owned and resided at a home located at 8633 Cheshire Court in Franklin, Ohio.  In September 2015, after divorce proceedings were initiated between the couple, Wife moved to 7103 Country

Walk Drive in Franklin, Ohio. After moving to Country Walk Drive, Wife updated her address with the post office to reflect that she had moved from Cheshire Court to Country Walk Drive. In her address-change request, Wife included herself and the couple's children, but did not include Jones. The couple's divorce was finalized in December 2015, and they sold the home on Cheshire Court in May of 2016. The new owner, Mr. Lamkin, moved into the Cheshire Court home on May 5, 2016.

{¶ 3} On August 29, 2016, the Warren County Board of Elections ("Board of Elections") received an application from Jones requesting an absentee voter's ballot for the general election on November 8, 2016. In completing the application, Jones listed 8633 Cheshire Court as his home address, and requested the Board of Elections to send the absentee ballot to a P.O. Box in Franklin, Ohio. Jones signed the application, declaring, "under penalty of election falsification, [that he was] a qualified elector and that the statements above [were] true to the best of [his] knowledge and belief."

{¶ 4} Prior to Jones' submission of his absentee ballot application, the address associated with his voter record had been changed to 7103 Country Walk Drive through the National Change of Address system ("NCOA"). Such a change occurs automatically when a person's address is updated with the U.S. Postal Service. Thus, upon receiving Jones' application, the Board of Elections noticed the address Jones provided, 8633 Cheshire Court, did not match the address listed in his voter record. Because Jones' address did not match his voter record, the Board of Elections rejected his application and sent Jones a standard problem letter on August 30, 2016. The problem letter notified Jones of the address problem and detailed how he could remedy the situation. The Board of Elections did not receive a response to the problem letter.

{¶ 5} On or about September 7, 2016, Jones met with the Warren County Director of Elections to discuss the rejection of his absentee ballot application. Specifically, Jones

wanted the Board of Elections to change his address back to the Cheshire Court address, as he did not authorize the change. At that time, the Director informed Jones that the Director would not change his address back to the Cheshire Court address and indicated that Jones was required to vote based on the location of his current address. In response, Jones stated he would "take care of this some other time[.]"

{¶ 6} On November 1, 2016, Jones returned to the Board of Elections office to cast a provisional ballot and vote early. At that time, Jones completed a provisional ballot, and provided his name, birthdate, the last four digits of his social security number, and his current address. On the ballot, Jones indicated his current address was 8633 Cheshire Court, Franklin, Ohio, which placed him in the 145th precinct in Warren County. Jones signed the provisional ballot, affirming he understood that "knowingly providing false information is a violation of the law and subjects [him] to criminal prosecution," and declaring that the "above statements [were] true and correct to the best of [his] knowledge and belief." Jones cast his ballot for the general election that day, including his vote on issues pertaining specifically to the 145th precinct in Warren County.

{¶ 7} Although Jones cast his ballot on November 1, 2016 at the Board of Elections office, his vote was ultimately not counted. Specifically, through the Board of Elections' audit process of provisional ballots, it was determined the address information provided by Jones did not match his voter information. Due to the deviation, the Board of Directors sent an acknowledgment notice to Jones at the Cheshire Court address, in an attempt to confirm that Jones lived there. The notice was returned to the Board of Elections by the U.S. Post Office, and indicated that Jones lived at 7104 Country Walk Drive, not at the Cheshire Court address. In light of the returned notice, the Board of Elections rejected Jones' provisional ballot before it was processed.

{¶ 8} Thereafter, the Board of Elections held a meeting where its members voted

to refer the matter to the Warren County Prosecutor's Office. After an investigation by the Lebanon Police Department, Jones was indicted by the Warren County Grand Jury for one count of illegal voting and one count of falsification. The matter proceeded to a jury trial at the conclusion of which Jones was found guilty of both counts. The two counts merged for sentencing purposes and the state elected to proceed in sentencing for the illegal voting charge. After a hearing, the trial court sentenced Jones to 18 months in prison.

{¶ 9} Jones timely appealed his illegal voting conviction, setting forth two assignments of error for our review. For the ease of discussion, Jones' two assignments of error will be discussed together.

{¶ 10} Assignment of Error No. 1:

{¶ 11} ANDREW JONES WAS A QUALIFIED ELECTOR.

{¶ 12} Assignment of Error No. 2:

{¶ 13} THE VERDICT WAS AGAINST THE SUFFICIENCY OF THE EVIDENCE.

{¶ 14} In his assignments of error, Jones argues that his illegal voting conviction is not supported by sufficient evidence because the state failed to prove that he was not a qualified elector of Warren County and Precinct 145.

{¶ 15} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St. 3d 380, 386, 1997-Ohio-52; *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a

reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 16} Jones was convicted of illegal voting in violation of R.C. 3599.12(A)(1), which provides that "[n]o person shall *** [v]ote or attempt to vote in any primary, special, or general election in a precinct in which that person is not a legally qualified elector[.]" A qualified elector is defined as:

> Every citizen of the United States who is of the age of eighteen years or over and who has been a resident of the state thirty days immediately preceding the election at which the citizen offers to vote, is a resident of the county and precinct in which the citizen offers to vote, and has been registered to vote for thirty days, has the qualifications of an elector and may vote at all elections in the precinct in which the citizen resides.

R.C. 3503.01(A).

{¶ 17} At issue in the instant matter is whether Jones was a resident of Warren County and Precinct 145, the county and precinct in which he attempted to vote. It is undisputed that the state has "unquestioned power to impose reasonable residence restrictions on the availability of the ballot." *Kyser v. Board of Elections*, 36 Ohio St. 2d 17, 19 (1973). In determining the residence of a person offering to vote, all registrars and officials are governed by R.C. 3503.02. Relevant to this appeal, R.C. 3503.02 states the following regarding a person's residency:

> (A) That place shall be considered the residence of a person in which the person's habitation is fixed and to which, whenever the person is absent, the person has the intention of returning.
>
> (B) A person shall not be considered to have lost the person's residence who leaves the person's home and goes into another state or county of this state, for temporary purposes only, with the intention of returning.
>
> (C) A person shall not be considered to have gained a residence in any county of this state into which the person comes for temporary purposes only, without the intention of making such county the permanent place of abode.
>
> * * *

(I) If a person does not have a fixed place of habitation, but has a shelter or other location at which the person has been a consistent or regular inhabitant and to which the person has the intention of returning, that shelter or other location shall be deemed the person's residence for the purpose of registering to vote.

{¶ 18} At trial, the state presented testimony from the Warren County Director of Elections, Mr. Lamkin, Wife, and the officer with the Lebanon Police Department who investigated the case. The Director of Elections testified that he oversees the day-to-day operations of his office and manages the elections in Warren County. According to the Director, the Board of Elections confirms all Warren County registrants' addresses when they update or change their address. This is partly because a voter's precinct is determined by his current address. According to the Director, an individual precinct can have its own ballot or election issues and only individuals residing in the precinct are able to vote on precinct-specific issues. Thus, a person who moves outside the county or precinct cannot vote in his old precinct or county. When a provisional ballot is cast, the Board of Elections verifies that the information on the ballot, including the voter's address, is accurate before the vote can be counted. While a person is required to register to vote 30 days before the upcoming election, he can vote in person at the Board of Elections office or at his polling location if he fails to timely register.

{¶ 19} The Director then described the interactions he and his office had with Jones throughout 2016. The Director indicated Jones applied for an absentee ballot, which was ultimately rejected because his listed address did not match the address identified in his voter's record. Specifically, Jones listed Cheshire Court as his current address on his application, which is in a different precinct than the Country Walk Drive address identified in his voter's record. The Director indicated Jones did not update his address himself, however, it was updated automatically through the NCOA system. At that point, the Board

of Elections attempted to resolve the issue with Jones via a problem letter. Jones did not respond to the letter, but later met with the Director to discuss the unauthorized change of his address. During the meeting, Jones requested his address be returned to the Cheshire Court address, which the Director declined to do. Instead, the Director explained to Jones that he was required to vote based upon his current address. Jones ultimately returned to the Board of Elections two months later and cast a provisional ballot using the Cheshire Court address. During an audit process, the Board of Elections attempted to confirm that Jones lived at Cheshire Court, but was unable to do so. As a result, Jones' ballot was rejected and not counted.

{¶ 20} Mr. Lamkin, the new owner of the home at 8633 Cheshire Court, testified that he moved into the home on May 6, 2016, and that he had never met Jones. Lamkin further testified that after he moved into the home on Cheshire Court, Jones never lived or stayed with Lamkin, including during October or November 2016.

{¶ 21} The jury also heard testimony from Wife, who testified that she and Jones sold the home on Cheshire Court in May of 2016 and that the new owners moved in "within a couple weeks" of the sale. Wife indicated Jones had never stayed with her at the Country Walk address, nor had he lived in an area nearby. Wife testified she had not received any change of address from Jones in October or November of 2016 and that, pursuant to the terms of their divorce, Jones was required to provide such a change of address if he moved. Wife further testified that she and Jones had two children, and that after the divorce, Jones had scheduled visitation, including overnight visitation, with their son. Wife indicated her son would visit with Jones at Jones' parents' house in Beavercreek, Ohio, which is located in Greene County.

{¶ 22} The state then presented testimony from Officer Spanel with the Lebanon Police Department. The officer testified that after the Director of Elections forwarded the

Jones' matter to the police department, the officer was assigned to investigate the case in February 2017. As a part of that investigation, the officer interviewed Jones in June 2017. A video of the interview was admitted into evidence and played for the jury during the officer's testimony. During the interview, Jones began by informing the officer that the day after he and the officer initially spoke, he went to the Greene County Library, "got a new voter registration, and took care of the problem." Jones then presented the officer with paperwork evidencing his recent voter registration in Greene County. During the interview, Jones admitted that he was no longer living at the Cheshire Court address at the time of the November 2016 election, and that he had not been living there for approximately five months by the time of the election. Jones claimed he must have "misremembered" part of his poll worker training as he incorrectly believed that if he voted a certain precinct's ballot in the primary election, he could vote the same precinct's ballot in the general election because the two elections are part of the same cycle.

{¶ 23} Jones also told the officer that because of the divorce, he was uncertain if he could provide enough evidence of where he was living. When the officer asked Jones when he moved to the address in Greene County, which he used to register to vote, Jones indicated that was his parents' address and that he wanted to "shield" their address as much as possible. Jones also stated he was embarrassed to admit that he lives with his parents because he had not had enough time "to recover" from the divorce. Jones further indicated that the officer could send any paperwork relevant to his charges to his parents' address.

{¶ 24} Jones then discussed the primary reason why he wanted "to vote the ballot[,]" in Warren County, which related to casting a vote against the attorney who represented Wife in their divorce proceedings. In 2016, that attorney was running in the Republican primary election for domestic relations judge. Jones stated he switched political parties solely to vote against the attorney, which Jones felt was an "important vote to make against

her" and that he "wish[ed he] could have done more." Jones indicated that voting against the attorney was one reason why he wanted to keep his address in Warren County.

{¶ 25} In concluding the interview, Jones indicated he believed the Board of Elections made a mistake in updating his address to Country Walk and felt he could not correct it. The officer responded that the "hiccup" in this case is that Jones voted using the Cheshire Court address when both he and the Board of Elections knew that he did not live there. Jones responded that he misremembered his training from his "poll worker days," felt "handcuffed" by the rules, and felt he did not have enough time to change his address and remain eligible to vote. As a result, he ultimately voted in Warren County "when he probably should've voted in Greene County."

{¶ 26} The jury also heard testimony from Jones at trial. During his testimony, Jones indicated there was not a good answer to where he was living on November 1, 2016 and that he did not have a stable address in October 2016. However, Jones confirmed he did not stay at 8633 Cheshire Court in October 2016 nor did he live with Wife at Country Walk Drive. While Jones could not recall where he spent "every single night in the month of October," he testified he had stayed at least one night of the month at his parents' home in Beavercreek and spent a weekend camping in Hamilton County. Jones would not admit that he was not living in Warren County in October 2016. Rather, Jones believed that because he was in Warren County jail on election day, he remained a resident of Warren County.

{¶ 27} Jones also testified that he went to the Board of Elections to discuss the address problem, including that he did not reside at Country Walk as the Board of Elections believed. In order to resolve the problem, Jones requested his address return to Cheshire Court. Jones further stated that, although he did not have a fixed address, he would frequently return to his parents' home, his storage unit in Warren County, Country Walk

Drive to pick up his son, and his P.O. Box. He further indicated there were "other places where [he] also [had] the intent to return," but did not disclose those locations. On cross-examination Jones admitted that he had not stayed overnight at his storage unit or P.O. Box, nor had he stayed overnight at the Country Walk address.

{¶ 28} Jones argues the state failed to prove that his residence was no longer in Warren County. In support of his argument, Jones claims the evidence at trial showed Jones did not have a fixed address, as he would stay with his parents in Greene County, went camping in Hamilton County, maintained a storage unit and P.O. box in Warren County, and picked his child up from Country Walk Drive. Thus, Jones concludes that although he did not have a fixed place of habitation, he "clearly had the intent to remain connected to Warren County." In the alternative, Jones claims that because he was in Warren County Jail on election day, he was residing in Warren County that day.

{¶ 29} After considering the evidence presented at trial in a light most favorable to the prosecution, we find the state presented sufficient evidence to prove that Jones' was not a qualified elector of Warren County or Precinct 145 at the time he cast his provisional ballot on November 1, 2016. That is, we find the state presented sufficient evidence that, if believed, established Jones was not a resident of Warren County, and consequently Precinct 145, at the time he attempted to vote.

{¶ 30} At trial, the state presented evidence that on November 1, 2016, Jones did not have a fixed place of habitation. Jones appears to concede this point in his brief. As a result, Jones' residence for the purposes of registering to vote was deemed to be any "other location at which [he] ha[d] been a consistent or regular inhabitant and to which [he had] the intention of returning." R.C. 3503.02(I). While Jones argues he was not consistently staying at any one place in November 2016, the testimony presented at trial revealed that Jones had moved in with his parents in Greene County after leaving Cheshire Court and

was consistently staying at their address. Specifically, the record reflects that Jones had overnight visits with his child at his parents' home during October and November of 2016 and that he had not provided Wife with any other address, which he was obligated to do pursuant to the terms of their divorce. Jones also used his parents' address to receive documents from Officer Spanel and ultimately registered to vote in Greene County based upon his parents' address in early 2017. Although Jones stated he was embarrassed to admit he was living with his parents, this does not change that he was, in fact, residing with them after his divorce. In contrast, there is no evidence in the record to suggest that Jones was regularly staying in or maintaining a residence in Warren County in 2016. As such, considering Jones' apparent residency in Greene County and lack of any residential connection to Warren County, we find that the state presented sufficient evidence that Jones was not a resident of Warren County, and consequently Precinct 145, at the time he attempted to vote.

{¶ 31} Jones argues his intent was "clearly" to return to Warren County and that he had no intention of making Greene County his permanent place of abode. This appears to be entirely based upon Jones' former residency at Cheshire Court. However, a person's former status as a resident has no bearing on the determination of a person's current residency. *Kyser v. Board of Elections*, 36 Ohio St. 2d 17 at 22. Rather, it is the present intention which determines a person's residency status, i.e., his intention at the time of the vote, and not his past intention some four months in the past, when he was living in a stationary household in a certain place. *Id*. Here, the record is void of any efforts Jones made to return to Warren County after moving from Cheshire Court. While Jones maintained his storage unit and P.O. Box in Warren County, these are unrelated to his residency on November 1, 2016. As Jones admitted, he could not physically reside in his P.O. Box and had never stayed at his storage unit. Moreover, based upon his conversations

with the Board of Elections and Officer Spanel, Jones attempted to vote using the Cheshire Court residency despite selling that home several months before the election and having no intention of returning to that address. Jones cannot have residence in a place where he has not lived for several months and no longer owns, and to which he presently has no intention of returning. *Id.*

{¶ 32} Furthermore, Jones did not provide at trial, to the Board of Elections, or Officer Spanel, any address within Warren County where he consistently stayed and had an intention of returning at the time he attempted to vote, and openly admitted he "probably should have voted in Greene County." While Jones noted he was incarcerated in Warren County on election day, that fact is irrelevant to his residency on November 1, 2016, the day he cast his provisional ballot. As such, the record does not contain any evidence that Jones resided in Warren County or Precinct 145, or maintained any intent to return to said county or precinct, on November 1, 2016.

{¶ 33} In light of the above, we find the state presented sufficient evidence to support Jones' conviction for illegal voting. Specifically, we find that at the time of the vote, Jones did not have a fixed place of habitation in Warren County and was not regularly staying in Warren County, nor did he have an intention to return to Warren County. Therefore, because Jones was not a resident of Warren County and Precinct 145, the county and precinct in which he attempted to vote, he was not a qualified elector. Accordingly, finding no merit to Jones' claims, we overrule Jones' two assignments of error.

{¶ 34} Judgment affirmed.

HENDRICKSON, P.J., and S. POWELL, J., concur.